# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 17-109V

| | |
|---|---|
| FRANCES RUZICKA,<br><br>        Petitioner,<br><br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>        Respondent. | Special Master Katherine E. Oler<br><br><br>Filed: August 8, 2023<br>Reissued: November 28, 2023 |

*Patricia Finn*, Patricia Finn, P.C., Pearl River, NY, for Petitioner
*Sarah Rifkin*, U.S. Department of Justice, Washington, DC, for Respondent

## DECISION AWARDING INTERIM ATTORNEYS' FEES AND COSTS[1]

On January 24, 2017, Frances Ruzicka ("Petitioner") filed a petition seeking compensation under the National Vaccine Injury Compensation Program ("the Vaccine Program").[2] Pet., ECF No. 1. Petitioner alleges that she developed post-vaccination syndrome and fibromyalgia as a result of the tetanus-diphtheria-acellular-pertussis ("Tdap") vaccine she received on July 19, 2014. Pet. at 1, 6.

Petitioner filed a Motion for Interim Attorneys' Fees and Costs on March 15, 2023,

---

[1] Because this Decision contains a reasoned explanation for the action in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] The Vaccine Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755 (codified as amended at 42 U.S.C. §§ 300aa-10–34 (2012)) (hereinafter "Vaccine Act" or "the Act"). All subsequent references to sections of the Vaccine Act shall be to the pertinent subparagraph of 42 U.S.C. § 300aa.

1

requesting a total of $50,414.57.[3] *See* ECF No. 92 at 1 (hereinafter "Fees Application" or "Fees App."). Respondent filed a response (hereinafter "Fees Response" or "Fees Resp.") on March 16, 2023, deferring to me as to whether Petitioner has met the legal standard for an award of interim attorneys' fees and costs. Fees Resp. at 3, ECF No. 93. If I determine that an award of interim fees and costs is appropriate, Respondent "respectfully recommends that the Special Master exercise her discretion and determine a reasonable award for attorney's fees and costs." *Id.* at 4. Petitioner did not file a reply.

On August 8, 2023, I issued a Decision on Interim Attorneys' Fees and Costs, awarding Petitioner a total of $41,928.82, requiring that attorneys' fees and costs be paid "in the form of a check jointly payable to Petitioner and her attorney, Ms. Patricia Finn." ECF No. 94.

On August 24, 2023, Petitioner's counsel, Patricia Finn, filed a Motion for Reconsideration requesting that the interim fees award be made solely payable to her as she is not in communication with her client. *See generally* ECF No. 99. Ms. Finn stated that the last contact she had with Petitioner was in January 2023. *Id.* at 2. Ms. Finn also expressed her belief based on that conversation that Petitioner will refuse to endorse the interim attorneys' fees check to Ms. Finn. *Id.*

On August 28, 2023, I issued an order granting Ms. Finn's Motion for Reconsideration and withdrew my Decision on Interim Attorneys' Fees and Costs. ECF No. 101. I also stated that the issue of whether Ms. Finn was entitled to the relief she requested required further analysis. Respondent filed a memorandum opposing direct payment of attorneys' fees and costs on November 15, 2023. ECF No. 107.

On November 28, 2023, I issued an order granting Ms. Finn's request for direct payment of attorneys' fees and costs. ECF No. 109. I now reissue my Decision on Interim Attorneys' Fees and Costs with appropriate updates.

I hereby **GRANT IN PART** Petitioner's application and award a total of **$44,991.32** in interim attorneys' fees and costs.

**I.     Legal Standard**

    **A.  Interim Attorneys' Fees and Costs**

The Federal Circuit has held that an award of interim attorneys' fees and costs is permissible under the Vaccine Act. *Shaw v. Sec'y of Health & Hum. Servs.,* 609 F.3d 1372 (Fed. Cir. 2010); *Avera v. Sec'y of Health & Hum. Servs.*, 515 F.3d 1343 (Fed. Cir. 2008). In *Cloer*, the Federal Circuit noted that "Congress [has] made clear that denying interim attorneys' fees under the Vaccine Act is contrary to an underlying purpose of the Vaccine Act." *Cloer v. Sec'y of Health & Hum. Servs.*, 675 F.3d 1358, 1361-62 (Fed. Cir. 2012).

---

[3] This amount is incorrect. Petitioner requests a total of $46,484.04 in attorneys' fees and $5,133.62 in costs, which totals $51,617.66.

In *Avera,* the Federal Circuit stated, "[i]nterim fees are particularly appropriate in cases where proceedings are protracted, and costly experts must be retained." *Avera*, 515 F.3d at 1352. Likewise, in *Shaw,* the Federal Circuit held that "where the claimant establishes that the cost of litigation has imposed an undue hardship and there exists a good faith basis for the claim, it is proper for the special master to award interim attorneys' fees." 609 F.3d at 1375. *Avera* did not, however, define when interim fees are appropriate; rather, it has been interpreted to allow special masters discretion. *See Avera*, 515 F.3d; *Kirk v. Sec'y of Health & Hum. Servs.*, No. 08-241V, 2009 WL 775396, at *2 (Fed. Cl. Spec. Mstr. Mar. 13, 2009); *Bear v. Sec'y of Health & Hum. Servs.*, No. 11-362V, 2013 WL 691963, at *4 (Fed. Cl. Spec. Mstr. Feb. 4, 2013). Even though it has been argued that a petitioner must meet the three *Avera* criteria -- protracted proceedings, costly expert testimony, and undue hardship -- special masters have instead treated these criteria as possible factors in a flexible balancing test. *Avera*, 515 F.3d at 1352; *see Al-Uffi v. Sec'y of Health & Hum. Servs.*, No. 13-956V, 2015 WL 6181669, at *7 (Fed. Cl. Spec. Mstr. Sept. 30, 2015).

A petitioner is eligible for an interim award of reasonable attorneys' fees and costs if the special master finds that a petitioner has brought his petition in good faith and with a reasonable basis. §15(e)(1); *Avera*, 515 F.3d at 1352; *Shaw*, 609 F.3d at 1372; *Woods v. Sec'y of Health & Hum. Servs*, 105 Fed. Cl. 148 (2012), at 154; *Friedman v. Sec'y of Health & Hum. Servs.*, 94 Fed. Cl. 323, 334 (2010); *Doe 21 v. Sec'y of Health & Hum. Servs.*, 89 Fed. Cl. 661, 668 (2009); *Bear*, 2013 WL 691963, at *5; *Lumsden v. Sec'y of Health & Hum. Servs.*, No. 97-588V, 2012 WL 1450520, at *4 (Fed. Cl. Spec. Mstr. Mar. 28, 2012). The undue hardship inquiry looks at more than just financial involvement of a petitioner; it also looks at any money expended by a petitioner's counsel. *Kirk*, 2009 WL 775396, at *2. Referring to *Avera*, former Chief Special Master Golkiewicz in *Kirk* found that "the general principle underlying an award of interim fees [is] clear: avoid working a substantial financial hardship on petitioners and their counsel." *Id*.

### B. Good Faith

The good faith requirement is met through a subjective inquiry. *Di Roma v. Sec'y of Health & Hum. Servs.*, No. 90-3277V, 1993 WL 496981, at *1 (Fed. Cl. Spec. Mstr. Nov. 18, 1993). Such a requirement is a "subjective standard that focuses upon whether [P]etitioner honestly believed he had a legitimate claim for compensation." *Turner v. Sec'y of Health & Hum. Servs.*, No. 99-544V, 2007 WL 4410030, at *5 (Fed. Cl. Spec. Mstr. Nov. 30, 2007). Without evidence of bad faith, "petitioners are entitled to a presumption of good faith." *Grice v. Sec'y of Health & Hum. Servs.*, 36 Fed. Cl. 114, 121 (1996). Thus, so long as Petitioner had an honest belief that his claim could succeed, the good faith requirement is satisfied. *See Riley v. Sec'y of Health & Hum. Servs.*, No. 09-276V, 2011 WL 2036976, at *2 (Fed. Cl. Spec. Mstr. Apr. 29, 2011) (citing *Di Roma*, 1993 WL 496981, at *1); *Turner*, 2007 WL 4410030, at *5.

### C. Reasonable Basis

Unlike the good-faith inquiry, an analysis of reasonable basis requires more than just a petitioner's belief in his claim. *Turner*, 2007 WL 4410030, at *6-7. Instead, the claim must at least be supported by objective evidence -- medical records or medical opinion. *Sharp-Roundtree v.*

3

*Sec'y of Health & Hum. Servs.*, No. 14-804V, 2015 WL 12600336, at *3 (Fed. Cl. Spec. Mstr. Nov. 3, 2015).

While the statute does not define the quantum of proof needed to establish reasonable basis, it is "something less than the preponderant evidence ultimately required to prevail on one's vaccine-injury claim." *Chuisano v. United States,* 116 Fed. Cl. 276, 283 (2014). The Court of Federal Claims affirmed in *Chuisano* that "[a]t the most basic level, a petitioner who submits no evidence would not be found to have reasonable basis…." *Id.* at 286. The Court in *Chuisano* found that a petition which relies on temporal proximity and a petitioner's affidavit is not sufficient to establish reasonable basis. *Id.* at 290; *see also Turpin v. Sec'y Health & Hum. Servs.*, No. 99-564V, 2005 WL 1026714, *2 (Fed. Cl. Spec. Mstr. Feb. 10, 2005) (finding no reasonable basis when petitioner submitted an affidavit and no other records); *Brown v. Sec'y Health & Hum. Servs.*, No. 99-539V, 2005 WL 1026713, *2 (Fed. Cl. Spec. Mstr. Mar. 11, 2005) (finding no reasonable basis when petitioner presented only e-mails between her and her attorney). The Federal Circuit has affirmed that "more than a mere scintilla but less than a preponderance of proof could provide sufficient grounds for a special master to find reasonable basis." *Cottingham v. Sec'y of Health & Hum. Servs.*, No. 2019-1596, 971 F.3d 1337, 1346 (Fed. Cir. 2020) (finding Petitioner submitted objective evidence supporting causation when she submitted medical records and a vaccine package insert); *see also James-Cornelius v. Sec'y of Health & Hum. Servs.*, 984 F.3d 1374, 1380 (Fed. Cir. 2021) (finding that "the lack of an express medical opinion on causation did not by itself negate the claim's reasonable basis.").

Temporal proximity between vaccination and onset of symptoms is a necessary component in establishing causation in non-Table cases, but without more, temporal proximity alone "fails to establish a reasonable basis for a vaccine claim." *Chuisano*, 116 Fed. Cl. at 291.

The Federal Circuit has stated that reasonable basis "is an objective inquiry" and concluded that "counsel may not use [an] impending statute of limitations deadline to establish a reasonable basis for [appellant's] claim." *Simmons v. Sec'y of Health & Hum. Servs.*, 875 F.3d 632, 636 (Fed. Cir. 2017). Further, an impending statute of limitations should not even be one of several factors the special master considers in her reasonable basis analysis. "[T]he Federal Circuit forbade, altogether, the consideration of statutory limitations deadlines—and all conduct of counsel—in determining whether there was a reasonable basis for a claim." *Amankwaa v. Sec'y of Health & Hum. Servs.*, 138 Fed. Cl. 282, 289 (2018).

"[I]n deciding reasonable basis the [s]pecial [m]aster needs to focus on the requirements for a petition under the Vaccine Act to determine if the elements have been asserted with sufficient evidence to make a feasible claim for recovery." *Santacroce v. Sec'y of Health & Hum. Servs.*, No. 15-555V, 2018 WL 405121, at *7 (Fed. Cl. Jan. 5, 2018). Special masters cannot award compensation "based on the claims of petitioner alone, unsubstantiated by medical records or by medical opinion." 42 U.S.C. § 300aa-13(a)(1). Special masters and judges of the Court of Federal Claims have interpreted this provision to mean that petitioners must submit medical records or expert medical opinion in support of causation-in-fact claims. *See Waterman v. Sec'y of Health & Hum. Servs.,* 123 Fed. Cl. 564, 574 (2015) (citing *Dickerson v. Sec'y of Health & Hum. Servs.*, 35 Fed. Cl. 593, 599 (1996) (stating that medical opinion evidence is required to support an on-Table theory where medical records fail to establish a Table injury).

4

When determining if a reasonable basis exists, many special masters and judges consider a myriad of factors. The factors to be considered may include "the factual basis of the claim, the medical and scientific support for the claim, the novelty of the vaccine, and the novelty of the theory of causation." *Amankwaa*, 138 Fed. Cl. at 289. This approach allows the special master to look at each application for attorneys' fees and costs on a case-by-case basis. *Hamrick v. Sec'y of Health & Hum. Servs.*, No. 99-683V, 2007 WL 4793152, at *4 (Fed. Cl. Spec. Mstr. Nov. 19, 2007).

## II. Discussion

### A. Undue Financial Hardship

The undue hardship inquiry looks at more than just financial involvement of a petitioner; it also looks at any money expended by petitioner's counsel. *Kirk*, 2013 WL 775396, at *2 (finding "the general principle underlying an award of interim fees was clear: avoid working a substantial financial hardship on petitioners and their counsel."). In this case, Petitioner's attorney has been working on this case since 2015. Fees App., Ex. G. The Federal Circuit has noted that interim fees "are particularly appropriate in cases where proceedings are protracted and costly experts must be retained." *Avera*, 515 F.3d at 1352 (Fed. Cir. 2008).

I also note that the COVID-19 pandemic has had a significant impact on the United States economy and such impact has been recognized by this court. *See Monge-Landry v. Sec'y of Health & Hum. Servs*, No. 14-853V, 2020 WL 4219821 *5 (Fed. Cl. Spec. Mstr. Jun. 30, 2020) (recognizing the COVID-19 pandemic's continued disruption of the airline industry in its calculation of appropriate interim fees).

Given these unprecedented economic circumstances, and the time already spent litigating this case, I find that the Petitioner would suffer undue hardship in the absence of an award of interim attorneys' fees and costs.

### B. Good Faith and Reasonable Basis

Respondent has not raised any specific objection to the good faith or reasonable basis for this claim and leaves such a determination to my discretion. *See* Fees Resp. at 2-4. I find that the petition was filed in good faith.

With regards to reasonable basis, Petitioner submitted four expert reports. Petitioner has submitted two expert reports from Dr. James Neuenschwander; one expert report from Dr. Toni Bark (who has unfortunately passed away), and one from Dr. James Lyons-Weiler (whose opinion is not being considered for entitlement purposes). *See* Exs. 6, 23, 49, 63. Both Drs. Bark and Neuenschwander have opined that Petitioner suffered from a post-vaccination syndrome, but disagreed on Petitioner's later diagnosis. *Compare* Ex. 6 at 3 (Dr. Bark's opinion that Petitioner had "vaccine-induced Myalgic encephalomyelitis/Chronic Fatigue Syndrome (ME/CFS)"; Ex. 49 at 1 (Dr. Neuenschwander's opinion that Petitioner suffers from a small fiber neuropathy). Both doctors have also provided a causation theory involving aluminum hydroxide in the Tdap vaccine. While theories involving alum adjuvants have not been successful in the Vaccine Program, this

theory must be evaluated on its own merits. *See*, *e.g.*, *D'Angiolini v. Sec'y of Health & Hum. Servs.*, No. 99-578V, 122 Fed. Cl. 86 (2015). Furthermore, it is undeniable that some of Petitioner's treating physicians believed she might have suffered from a vaccine-induced reaction. *See* Ex. 2 at 47; Ex. 3 at 6.

This constitutes sufficient evidence to establish a reasonable basis for the claim. As there is no other reason to deny an award of interim attorneys' fees and costs, I will award Petitioner's reasonable fees and costs in this instance.

### C. Attorneys' Fees

Petitioner requests a total of $46,484.04 in attorneys' fees, consisting of $41,339.49 in attorneys' fees and $5,144.55 in paralegal fees. Fees App., Ex. G.

#### 1. Reasonable Hourly Rate

A reasonable hourly rate is defined as the rate "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Avera*, 515 F.3d at 1348 (quoting *Blum*, 465 U.S. at 896 n.11). In general, this rate is based on "the forum rate for the District of Columbia" rather than "the rate in the geographic area of the practice of [P]etitioner's attorney." *Rodriguez v. Sec'y of Health & Hum. Servs.*, 632 F.3d 1381, 1384 (Fed. Cir. 2011) (citing *Avera*, 515 F. 3d at 1349).

*McCulloch* provides the framework for determining the appropriate compensation for attorneys' fees based upon the attorneys' experience. *See McCulloch v. Sec'y of Health & Hum. Servs.*, No. 09–293V, 2015 WL 5634323 (Fed. Cl. Spec. Mstr. Sept. 1, 2015). The Office of Special Masters has accepted the decision in *McCulloch* and has issued a Fee Schedule for subsequent years.[4]

Petitioner's counsel, Ms. Patricia Finn, requests a rate of $375 per hour for 2015-16; $383 per hour for 2017; $396 per hour for 2018; $405 per hour for 2019; $422 per hour for 2020; $444 per hour for 2021; and $458 per hour for 2022. Fees App., Ex. A at 27. Mr. Finn also requests paralegal rates between $145-$172 per hour for the paralegal work she performed between 2015-2022. *Id.*

---

[4] The 2018 Fee Schedule can be accessed at: http://www.cofc.uscourts.gov/sites/default/files/Attorneys%27%20Forum%20Rate%20Fee%20Schedule%202018.pdf.
The 2019 Fee Schedule can be accessed at: http://www.cofc.uscourts.gov/sites/default/files/Attorneys%27%20Forum%20Rate%20Fee%20Schedule%202019.pdf.
The 2020 Fee Schedule can be accessed at: http://www.cofc.uscourts.gov/sites/default/files/Attorneys%27%20Forum%20Rate%20Fee%20Schedule%202020.PPI_OL.pdf
The 2021 Fee Schedule can be accessed at: http://www.cofc.uscourts.gov/sites/default/files/Attorneys-Forum-Rate-Fee-Schedule-2021-PPI-OL.pdf
The 2022 Fee Schedule can be accessed at: https://www.uscfc.uscourts.gov/sites/default/files/Attorneys%27-Forum-Rate-Fee-Schedule-2022-%28Final%29.pdf.
The hourly rates contained within the schedules are updated from the decision in McCulloch, 2015 WL 5634323.

6

This request is not consistent with what I and other special masters have previously awarded Ms. Finn. *See, e.g., Matten v. Sec'y of Health & Hum. Servs.*, No. 12-155V, 2023 WL 4195481 (Fed. Cl. Spec. Mstr. May 30, 2023) (another case where Ms. Finn's requested rates are the same as requested in the present case but reduced to remain consistent with what Ms. Finn has previously been awarded); s*ee also Bohn on behalf of G.B. v. Sec'y of Health & Hum. Servs.*, No. 16-265V, 2023 WL 2364831 (Fed. Cl. Spec. Mstr. Mar. 6, 2023) (awarding Ms. Finn hourly rates of: $316 in 2015, $328 in 2016, $340 in 2017, $352 in 2018, $365 in 2019, $378 in 2020, $400 in 2021, and $422 in 2022); *Yates v. Sec'y of Health & Hum. Servs.*, No. 14-560V, 2022 WL 2441324 (Fed. Cl. Spec. Mstr. June 9, 2022) (awarding Ms. Finn $310 in 2014, $316 in 2015, $328 in 2016, $340 in 2017, $352 in 2018, $365 in 2019, and $378 in 2020). Ms. Finn has not provided any specific reasoning to support her request for higher hourly rates than what has been awarded by other special masters.

Accordingly, I adjust Ms. Finn's hourly rates to what she has been paid in the past. I suggest Ms. Finn re-file her fee applications if she has done this in other cases as it requires the Court to recalculate her fees. Or alternatively, Ms. Finn should provide additional justification as to why her hourly rates dating back to 2015 should be changed.

| Year | Requested Attorney Hourly Rate | Adjusted Attorney Hourly Rate | Requested Paralegal Hourly Rate | Adjusted Paralegal Hourly Rate |
|---|---|---|---|---|
| 2015 | $375 | $316 | $145 | $135 |
| 2016 | $375 | $328 | $145 | $135 |
| 2017 | $383 | $340 | $148 | $140 |
| 2018 | $396 | $352 | $153 | $145 |
| 2019 | $405 | $365 | $156 | $150 |
| 2020 | $422 | $378 | $163 | $160 |
| 2021 | $444 | $400 | $172 | $165 |
| 2022 | $458 | $420 | $172 | $170 |

As there are errors regarding the hours Ms. Finn expended on this case as well, the total reductions will be reflected in the next section.

2. Hours Reasonably Expended

Attorneys' fees are awarded for the "number of hours reasonably expended on the litigation." *Avera*, 515 F.3d at 1348. Ultimately, it is "well within the Special Master's discretion to reduce the hours to a number that, in [her] experience and judgment, [is] reasonable for the work done." *Saxton ex rel. Saxton v. Sec'y of Health & Hum. Servs.*, 3 F.3d 1517, 1522 (Fed. Cir. 1993). In exercising that discretion, special masters may reduce the number of hours submitted by a percentage of the amount charged. *See Broekelschen v. Sec'y of Health & Hum. Servs.*, 102 Fed. Cl. 719, 728-29 (2011) (affirming the special master's reduction of attorney and paralegal hours); *Guy v. Sec'y of Health & Hum. Servs.*, 38 Fed. Cl. 403, 406 (1997) (affirming the special master's reduction of attorney and paralegal hours). Petitioner bears the burden of establishing that the rates charged, hours expended, and costs incurred are reasonable. *Wasson v. Sec'y of Health & Hum. Servs.*, 24 Cl. Ct. 482, 484 (1993). However, special masters may reduce awards *sua sponte*, independent of enumerated objections from the respondent. *Sabella v. Sec'y of Health & Hum.*

7

*Servs.*, 86 Fed. Cl. 201, 208-09 (Fed. Cl. 2009); *Savin v. Sec'y of Health & Hum. Servs.*, 85 Fed. Cl. 313, 318 (Fed. Cl. 2008), *aff'd* No. 99-573V, 2008 WL 2066611 (Fed. Cl. Spec. Mstr. Apr. 22, 2008).

A special master need not engage in a line-by-line analysis of petitioner's fee application when reducing fees. *Broekelschen*, 102 Fed. Cl. at 729. Special masters may look to their experience and judgment to reduce an award of fees and costs to a level they find reasonable for the work performed. *Saxton v. Sec'y of Health & Hum. Servs.*, 3 F.3d 1517, 1521 (Fed. Cir. 1993). It is within a special master's discretion to instead make a global reduction to the total amount of fees requested. *See Hines v. Sec'y of Health & Hum. Servs.*, 22 Cl. Ct. 750, 753 (1991) ("special masters have wide latitude in determining the reasonableness of both attorneys' fees and costs"); *Hocraffer v. Sec'y of Health & Hum. Servs.*, No. 99-533V, 2011 WL 3705153 (Fed. Cl. Spec. Mstr. July 25, 2011), mot. for rev. denied, 2011 WL 6292218, at *13 (Fed. Cl. 2011) (denying review of the special master's decision and endorsing "a global – rather than line-by-line – approach to determine the reasonable number of hours expended in this case").

      a. *Clerical and Administrative Time*

While attorneys may be compensated for non-attorney-level work, the rate must be comparable to what would be paid for a paralegal or secretary. *See O'Neill v. Sec'y of Health & Hum. Servs.*, No. 08–243V, 2015 WL 2399211, at *9 (Fed. Cl. Spec. Mstr. Apr. 28, 2015). Clerical and secretarial tasks should not be billed at all, regardless of who performs them. *See, e.g.*, *McCulloch*, 2015 WL 5634323, at *26. It is well-established that billing for administrative and clerical tasks is not permitted in the Vaccine Program. *Rochester v. United States*, 18 Cl. Ct. 379, 387 (1989).

The hours billed by Ms. Finn are inconsistently labeled and calculated. Examples include (but are not limited to):

- Entries on 12/29/2016, 6/5/2017, 6/15/2018, 6/3/2019, 12/23/2019, 7/1/2020, 12/22/2020, 1/19/2022, 7/5/2022, 12/21/2022 relating to "updat[ing] and "search[ing] through emails and including time sheets." These entries are billed at both attorney and paralegal rates.
- December 28, 2016 (0.7 hours) (billed at an attorney rate): "Prepared filing for ECF and Vert [sic] of Service"
- March 2, 2017 (0.2 hours) (billed at an attorney rate): "Prepared note of filing for exhibits and motion to subpoena"
- April 19, 2017 (0.3 hours) (billed at an attorney rate): "Prepared Statement of Completion for filing"
- October 19, 2017 (0.4 hours) (billed at an attorney rate): "Prepared notice of intent to remain in the program"

I also note that many entries were either mislabeled and improperly categorized in attorney and paralegal hours sections, further complicating calculations. As such, I have recalculated Ms. Finn's attorney and paralegal hours and applied the hourly rates that she has been previously awarded.

| Year | Adjusted Attorney Hourly Rate | Attorney Hours Granted | Adjusted Paralegal Hourly Rate | Paralegal Hours Granted | Total Awarded |
|---|---|---|---|---|---|
| 2015 | $316 | 1.1 | $135 | 1.35 | $529.85 |
| 2016 | $328 | 25.6 | $135 | 2.9 | $8,788.30 |
| 2017 | $340 | 9.25 | $140 | 3.35 | $3,614.00 |
| 2018 | $352 | 3.2 | $145 | 0.7 | $1,227.90 |
| 2019 | $365 | 9.35 | $150 | 0.7 | $3,517.75 |
| 2020 | $378 | 18.55 | $160 | 7.9 | $8,275.90 |
| 2021 | $400 | 14.6 | $165 | 4.1 | $6,516.50 |
| 2022 | $420 | 20.35 | $170 | 0.9 | $8,700.00 |

Since I have reduced Ms. Finn's hourly rates substantially, I will not apply a reduction for the clerical and administrative time spent in this case, but Ms. Finn should note that in the future, this time will not be compensated.

Total attorneys' fees to be awarded: **$41,170.20**

**D. Reasonable Costs**

Petitioner requests a total of $5,133.62 in costs, which includes obtaining medical records, the Court's filing fee, and Dr. Neuenschwander's expert costs. Fees App., Ex. G. Documentation was provided for the medical record requests and the Court's filing fee, which total $758.62, therefore these will be paid in full. I discuss the other request below.

1. Petitioner's Expert Costs for Dr. James Neuenschwander, M.D.

Dr. Neuenschwander submitted two expert reports in this case. Exs. 49, 63. Dr. Neuenschwander is requesting compensation at an hourly rate of $350.00 for 12.5 hours spent reviewing the record and preparing both reports, totaling $4,375.00.

Regarding Dr. Neuenschwander's hourly rate, no other special master has determined whether his requested hourly rate is reasonable. Dr. Neuenschwander's expert opinion has not been the subject of any other reasoned decision in the program to date; although he did serve as a treating physician for a petitioner in a separate Vaccine Program case. *See Jennings v. Sec'y of Health & Hum. Servs.*, No. 16-779V, 2020 WL 9258304, at *10-12 (Fed. Cl. Spec. Mstr. July 8, 2020). Although not filed in the present case, in *Jennings*, Respondent filed a document regarding a disciplinary action filed against Dr. Neuenschwander in 2014, to which he "entered into a consent order admitting to one count of negligence or failure to exercise due care and paid a punitive fine" in 2015. *See Jennings* at fns. 2, 16*; see also* James Neuenschwander, M.D., Complaint No. 43-13-127479 (Mich. Dep't of Licensing & Reg. Affs. May 20, 2015) https://aca-prod.accela.com/ MILARA/GeneralProperty /LicenseeDetail. aspx?LicenseeNumber=4301050438&LicenseeType =Medical+Doctor (showing the administrative complaint filed against Dr. Neuenschwander and that the disciplinary action was satisfied) (last visited Nov. 28, 2023).

9

It is well established that expert fees are only compensable in the Program to the extent that they are reasonable. *Baker v. Sec'y of Health & Hum. Servs.*, No. 99-653V, 2005 WL 589431, at *1 (Fed. Cl. Spec. Mstr. Feb. 24, 2005) (citation omitted). As with attorneys' fees, it is appropriate for a special master to award a reduced amount in expert fees if the quality of an expert's performance in the case warrants it. *Wood v. Sec'y of Health & Hum. Servs.*, No. 15-1568V, 2019 WL 518521, at *7 (Fed. Cl. Spec. Mstr. Jan. 11, 2019) (citation omitted).

Dr. Neuenschwander is a practicing medical doctor and still has an active medical license. However, as I noted in the decision denying entitlement, Dr. Neuenschwander's opinion as to Petitioner's diagnosis was not sufficiently supported by Petitioner's medical records. ECF No. 106 at 23, 25, 29. He diagnosed Petitioner with small fiber neuropathy without discussing any of Petitioner's physical examinations and how they did or did not support his proposed diagnosis. He further did not comment on or otherwise address the fact that none of Petitioner's treating physicians diagnosed her with SFN. Additionally, Dr. Neuenschwander extensively discussed aluminum toxicity even though the ASIA theory has been repeatedly discredited in the Vaccine Program. Dr. Neuenschwander is not a neurologist, rheumatologist, or immunologist, the three fields most relevant to this case. In my decision, I found that his opinion was not persuasive. *Id.* at 20. I find that Dr. Neuenschwander's performance as an expert witness in this matter fell well short of what is reasonably expected in the Vaccine Program. Accordingly, I will reduce his requested hourly rate by 30%, for a total reduction of $1,312.50.

As to the number of hours expended, Dr. Neuenschwander billed a total of 12.5 hours for reviewing the medical record and researching and producing two expert reports. Fees App. Ex. C. I find this number of hours reasonable and thus no further reduction is necessary.

Total costs to be awarded: **$3,821.12**

### III.  Conclusion

Accordingly, in the exercise of the discretion afforded to me in determining the propriety of interim fee and cost awards, and based on the foregoing, I **GRANT IN PART** Petitioner's application, as follows:

A lump sum in the amount of **$44,991.32**, representing reimbursement of Petitioner's interim attorneys' fees and costs in the form of a check payable solely to Petitioner's attorney, Ms. Patricia Finn.

In the absence of a motion for review filed pursuant to RCFC Appendix B, the Clerk of Court **SHALL ENTER JUDGMENT** in accordance with this decision.[5]

**IT IS SO ORDERED.**

---

[5] Pursuant to Vaccine Rule 11(a), the parties may expedite entry of judgment by filing a joint notice renouncing their right to seek review.

**<u>s/ Katherine E. Oler</u>**
Katherine E. Oler
Special Master